## STATE, BENJAMIN WRIGHT, PROSECUTOR v. CHARLES C. MORAN.

1. A writ of attachment was tested "the twenty-eighth of March, eighteen hundred and seventy ——." By the transcript it appeared that the writ was issued March 28th, 1879. The erroneous statement of the year was an oversight of the justice in filling up a printed blank. The mistake did no injury to the defendant, and was curable by amendment. An error which is the result of an oversight of the justice, which might have been cured by amendment, and has caused no injury, is no ground for reversal.

2. The transcript stated that the constable returned the writ of attachment as follows: "March 29, 1879. I return, &c." "Whereupon I appointed Friday, the 18th of April, 1879, to hear and determine the cause." *Held*, that it sufficiently appeared that the justice, upon the return of the attachment, appointed a day for the hearing of the cause.

3. The justice certified in his transcript that on the day of trial "it appeared in evidence that notices had been posted according to law." *Held*, it sufficiently appeared that the plaintiff had proved to the satisfaction of the justice that he had advertised the attachment in the manner prescribed by the statute.

4. The act of March 12th, 1879, (*Pamph. L., p.* 115,) entitled "An act to increase the jurisdiction of justices of the peace," which gives justices of the peace jurisdiction in suits where the debt, balance or other matter in dispute does not exceed, exclusive of costs, the sum or value of $200, applies only to the jurisdiction of justices of the peace under the act constituting courts for the trial of small causes. *Rev., p.* 538. The jurisdiction of justices of the peace to issue attachments is conferred by the sixty-second section of the attachment act, (*Rev., p.* 53,) and is limited by that section to actions in which the debt does not exceed the sum of $100.

5. A justice of the peace cannot issue an attachment for a debt which exceeds the sum of $100.

---

On *certiorari* to a justice of the peace to remove the judgment and proceedings under an attachment.

Argued at November Term, 1880, before Justices Depue, Scudder and Knapp.

For the prosecutor, *Van Blarcom & Cochran.*

For the defendant, *W. H. Francis.*

The opinion of the court was delivered by

DEPUE, J.   The reasons assigned for the reversal of this judgment may be classified and considered without stating them in detail.

*First.* The writ was returned on the 29th of March, 1879. The affidavit on which the writ was issued, was made on the 28th of March, 1879.   The writ bears teste on " the twenty-eighth of March, one thousand eight hundred and seventy," as appears by a certified copy of it annexed to the transcript. The justice's court act requires all precepts, summons, warrants, writs and other process to be tested on the day they are respectively issued.   *Rev., p.* 540, § 10.   By the transcript it appears that the writ was in fact issued on the 28th of March, 1879.   The erroneous statement of the year was purely an oversight in filling up a printed blank form of the writ   The statute requiring the writ to be tested on the day it was issued is only directory.   *Morris Canal* v. *Mitchell,* 2 *Vroom* 99. The mistake of the justice did no injury to the defendant, and is curable by amendment.   An error which is the result of an oversight of the justice, which might have been removed by amendment, and has not injured the defendant, is no ground for reversal.

*Second.* The statute requires that upon the return of the attachment, the justice shall appoint a day for the hearing of the cause, not less than twenty days from the issuing of the writ.   *Rev., p.* 54, § 62.   The transcript states that the writ was directed to Charles P. Roorback, constable, who returned the writ of attachment as follows :   "March 29, 1879, I return, &c. ;"   " Whereupon I appointed Friday the 18' day of April 1879 to hear and determine the cause."   The date affixed to the return is *prima facie* evidence of the time when it was made ; and the facts stated in the transcript, fairly construed, negative the reason assigned for reversal, that it does

not appear when the writ was returned, or that the justice did not, upon the return of the attachment, appoint a day for the hearing of the cause. On a more uncertain statement in a transcript, this court showed a disposition to disregard a similar reason for reversal, and obviate, by intendment, a like objection, in *Crisman* v. *Swisher*, 4 *Dutcher* 149.

*Third.* By the sixty-third section of the act it is made the duty of the plaintiff forthwith, after the issuing of the attachment, to give notice of the issuing of the attachment in three of the most public places in the county (*Rev., p.* 54); and it should appear by the transcript that the plaintiff had proved, to the satisfaction of the justice, that he advertised the attachment in the manner prescribed by the act. *Conover* v. *Conover*, 2 *Harr.* 187. The statute does not prescribe the form or mode of proof, nor does it in express terms require the fact of advertisement to be proved; but notice of the issuing of the writ being essential to the regularity of the proceedings, proof of the fact should be made before the justice proceeds to trial, and it ought to be stated in the docket. *Lentz* v. *Cullin*, 2 *Dutcher* 218. The justice, in his transcript, certifies that on the day of trial "it appeared in evidence that the notices had been posted according to law." The facts that advertisements were set up, and whether the notices were set up at the proper time and in proper places, were matters for the judicial determination of the justice; and the certificate thereof contained in the transcript shows that the justice, upon evidence, considered and adjudicated upon the essential fact of advertisement. This we think is all that is required. *Dodge* v. *Butler*, 13 *Vroom* 370.

*Fourth.* A much more important question discussed by counsel is that which relates to the jurisdiction of the justice over this suit. The plaintiff, in the affidavit on which the writ of attachment was issued, swears to an indebtedness of $200, as nearly as he could ascertain. The judgment is for $198.50 debt, and $4.61 costs of suit.

Before the act of March 12th, 1879, (*Pamph. L., p.* 115,) the jurisdiction of justices of the peace in matters of attach-

ment was limited to a sum not exceeding $100. *Rev., p.* 53, § 62. If the justice had jurisdiction to issue the writ of attachment in this case, he must have acquired it by force of the provisions of the act before referred to.

The title of the act of March 12th, 1879, is, "An act to increase the jurisdiction of justices of the peace." There is no constitutional difficulty inherent in this legislation arising out of the number of objects embraced in it, or defect in its title. The object of the act is a unit—to increase the jurisdiction of justices of the peace; and that object is clearly expressed in the title of the act. The question, therefore, is one purely of construction—to ascertain, from the language of the statute, to what extent, over what subjects, and in what actions or proceedings the legislature intended to increase the jurisdiction of justices of the peace.

At common law the jurisdiction and powers of justices of the peace were confined to criminal proceedings as conservators of the peace. All their civil duties, powers and authorities have been superadded by statute, and they have no civil jurisdiction or powers whatever, except such as have been conferred on them from time to time by statute. *Munn* v. *Harrison*, 2 *Green* 183; *Smith* v. *Abbott*, 2 *Harr*. 358.

Courts for the trial of small causes were established in the colony of East Jersey as early as 1682, with a jurisdiction of forty shillings and under. *Leam. & Spicer* 229–310. At the same session of the legislature, which was held at Elizabethtown, remedy for the recovery of debts against non-residents was provided by a summons issued out of the Court of Common Right, to be served by being left with any servant, wife, or any person being at or in any of the houses, plantations or estates of such non-resident, or to which they claim as their right or reputed right, and for the want of such resident or inhabitant there living, left at or in any of such houses, plantations or premises. *Leam. & Spicer* 266. After the surrender of the government to the crown, the first systematic attempt to legislate on the subject of proceeding against absconding debtors was made in 1733, when an act was passed " for the bet-

ter enabling creditors to recover their just debts from debtors who abscond themselves." 1 *Neville* 468. This act expired and was renewed in 1740, and expired and was again renewed in 1743, (1 *Neville* 469,) and was renewed for seven years in 1748 (1 *Neville* 387,) and expired and was amended and continued without limitation in 1760. *Allinson* 236.

The first act constituting courts for the trial of small causes to be held by justices of the peace, after the surrender of the government to the crown, was passed in 1740. 1 *Neville* 469. That act expired and was renewed in 1743 (*Id.* 469); in 1748 (*Id.* 388); in 1760 (2 *Id.* 335); in 1768 (*Allinson* 313); and again in 1775 (*Id.* 468.) In the act as originally passed, jurisdiction was limited to demands for and under £5. By the act of 1768, jurisdiction was increased to $6. By an act passed in 1779, which was limited to one year, the jurisdiction of the court was increased to £50 (*Wilson* 78,) and in 1782 was fixed at £12, (*Id.* 263.) By a section in the attachment acts in force during that period, jurisdiction was given to justices of the peace to issue attachments for debts which were cognizable before them. But it will be perceived that the jurisdiction of justices of the peace in attachments was kept entirely distinct from their jurisdiction and powers when sitting in the courts for the trial of small causes; and the proceedings before justices of the peace in matters of attachment were regulated by the provisions of the attachment act.

On the 8th of March, 1798, " An act for the relief of creditors against absconding and absent debtors," and, on the 15th of the same month, " An act constituting courts for the trial of small causes," were passed. *Paterson* 296–313. These two acts, in their main provisions, are substantially the attachment and justice's court acts now in force. By the acts of 1798 the jurisdiction was given to justices of the peace under the small cause act in all civil causes, with certain exceptions, where the matter in dispute did not exceed $60; but in the attachment act a justice of the peace was authorized to issue an attachment for a sum not exceeding $20. In 1801,

the jurisdiction of justices of the peace, under the act concerning courts for the trial of small causes, was increased to $100. *Pamph. L.* 1801, *p.* 121. In 1822 the jurisdiction of justices of the peace under the attachment act was increased to $50 (*Harr. Com.* 40); and it was not until 1852 that their jurisdiction to issue attachments was raised, so as to enable them to issue writs of attachment for a sum amounting to $100. *Pamph. L.* 1852, *p.* 62. In all the legislation on these subjects the power of justices of the peace to proceed against absent or absconding debtors by attachment has been kept distinct from their jurisdiction when sitting in the court for the trial of small causes—as distinct as are the powers conferred on justices of the peace under the forcible entry and detainer act, or for the removal of tenants under the landlord and tenant act; and it has always been considered that proceedings in attachment before a justice are not in pursuance of the act constituting courts for the trial of small causes, or in conformity with its provisions, except as directed by the attachment act. *Laird* v. *Abrahams,* 3 *Green* 25.

With this review of the legislation on this subject, and with an understanding of the difference between the jurisdiction of a justice of the peace under the justice's court act and his powers under the attachment act, the way is prepared for the consideration of the question whether by the act of 1879, the legislature intended to increase the jurisdiction of justices of the peace in all actions or proceedings upon money demands of which they have cognizance as justices of the peace, or whether the legislative purpose was only to increase the limit of jurisdiction with respect to such suits and actions as justices of the peace have cognizance of under the act constituting courts for the trial of small causes.

A legislative purpose to place the jurisdiction of justices of the peace under the attachment act and under the justice's court act on an equality cannot be inferred from the fact that, in both instances, the proceedings are before the same class of magistrates; for, as we have seen, from 1798 to 1852, the

sum which limited the powers of justices of the peace under the attachment act was less than that which limited their jurisdiction in actions under the act constituting courts for the trial of small causes.

The title of the act of 1879 is so general in its language as to afford no aid whatever in the construction of the act. Under the generality of its terms, the legislature might have passed an act increasing the jurisdiction of justices under the attachment act, or under the justice's court act, or under both acts. We must be guided, therefore, in construing this statute, only by the language used in the body of the act, with such assistance as is afforded by the course of legislation in the past.

The first section of the act, which is the only part of it that relates to jurisdiction, is in these words: " That every suit of a civil nature at law, where the debt, balance, or other matter in dispute does not exceed, exclusive of costs, the sum or value of two hundred dollars, shall be and hereby is made cognizable in any court for the trial of small causes of this state, where the same may be heard and determined according to law." This language is identical with the language of the first section of the act constituting courts for the trial of small causes, as it stood in the Revision of 1874 (*Rev., p.* 538,) except that $200 is inserted instead of $100, and instead of the words in the former act, " cognizable before any justice of the peace of any county in this state, who is hereby authorized to hold a court within such county to hear, try and determine the same according to law, although the cause of action did not arise in said county, which court shall be a court of record, and vested with all such power as is usual in courts of record in this state," the act of 1879 uses the words " cognizable in any court for the trial of small causes of this state, where the same may be heard and determined according to law." The proper and legal construction of this language seems to me to be perfectly obvious. The first part of the paragraph quoted from the act of 1879, is plainly amendatory of the corresponding part of the justice's

court act. It literally follows the language of the latter act, with a substitution of "two" for "one" in the designation of the sum within which jurisdiction is restricted. The act of 1879 makes causes within the limit mentioned cognizable in "any court for the trial of small causes." The justice's court act is entitled "An act constituting courts for the trial of small causes." In the first section any justice of the peace is authorized to hold a court to hear, try and determine such causes according to law, and the court is created a court of record, with such powers as are usual to courts of record of this state. The process issued is called the process of the court for the trial of small causes (section 10); actions pending are called actions instituted in the court for the trial of small causes (section 116); and its judgments are called judgments of the court for the trial of small causes, (sections 70, 96.) Ever since 1798, the court held by virtue of this act has been known as the court for the trial of small causes, as distinctively as the Supreme Court and Court of Common Pleas are known by their titles. Recurring to the first section of the act of 1879, which makes suits where the debt, balance or matter in dispute does not exceed the sum of $200 "cognizable in any court for the trial of small causes," it is entirely clear that the act is amendatory of the act constituting the court for the trial of small causes, and that the increase of jurisdiction conferred applies only to such jurisdiction as justices of the peace are empowered to exercise under that act.

The power of a justice of the peace to issue an attachment is not derived from the act constituting courts for the trial of small causes. It is granted by the sixty-second section of the act entitled "An act for the relief of creditors against absconding and absent debtors;" and by that act the jurisdiction is limited to sums not exceeding $100. *Rev., p.* 53.

For this reason the judgment should be reversed.